JUDGE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 8808

------------------------------------------------x

CYRUS NESBIT,

                Plaintiff,

- against -

MEDIACOM WORLDWIDE, INC. and
GROUPM WORLDWIDE, INC.

                Defendants.

------------------------------------------------x

10 Civ. _____

ECF Case

COMPLAINT

RECEIVED
NOV 22 2010

PLAINTIFF DEMANDS
A TRIAL BY JURY

        Plaintiff Cyrus Nesbit ("Nesbit" or "plaintiff"), by his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complaining of defendants Mediacom Worldwide, Inc. ("Mediacom") and GroupM Worldwide, Inc. ("GroupM") (collectively, "defendants") alleges as follows:

### NATURE OF CLAIMS

        1.     This action is brought to remedy discrimination in the terms, conditions, and privileges of employment based on federal grand jury service, in violation of 28 U.S.C. § 1875 of the Jury System Improvements Act.

        2.     Injunctive and declaratory relief, damages, statutory penalties, and other appropriate legal and equitable relief are sought pursuant to 28 U.S.C. § 1875.

### PARTIES, JURISDICTION AND VENUE

        3.     Plaintiff was employed by Mediacom from May 2005 until March 2010, when defendant fired him.

269586 v5

4.   Defendant Mediacom is an advertising agency and a Delaware corporation with headquarters in Manhattan. On information and belief, Mediacom is a subsidiary of defendant GroupM, which is a subsidiary of WPP PLC.

5.   Defendant GroupM is a Delaware corporation with headquarters in Manhattan. GroupM is WPP's consolidated media investment management operation, serving as the parent company of WPP's media agencies including, in addition to Mediacom, Maxus, MEC, Mindshare and Kinetic. GroupM has more than 14,000 employees and 400 global offices in 81 countries.

6.   Jurisdiction of this Court is proper under 28 U.S.C. § 1331.

7.   As the Southern District of New York is the district where a substantial part of the events giving rise to the claim occurred, venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2).

## FACTUAL ALLEGATIONS

### Nesbit's Employment With Mediacom

8.   On or about May 2, 2005, Mediacom hired plaintiff to work as a temporary Freelance Communications Planning Supervisor.

9.   Less than three months after being hired, because of plaintiff's strong performance, Mediacom offered plaintiff a permanent, full-time position as a Communications Planning Supervisor. Plaintiff was initially assigned to the Outback Steakhouse Brands ("Outback") account.

10. In or around February 2008, Mediacom lost the Outback account. Following the loss of this account, Mediacom assigned plaintiff to work on a variety of other accounts.

### Plaintiff is Transferred to the Dell Account

11. In March 2008, Mediacom transferred plaintiff to the Dell Consumer Media Planning Team.

12. In the Dell group, plaintiff reported directly to Tom Russell ("Russell"), Planning Director, who in turn reported to Anne Liss ("Liss"), then-Group Director. In or around September 2009, Mediacom replaced Liss with Adam Komack ("Komack").

13. On the Dell team, plaintiff was given the same title (Communications Planning Supervisor) as he held while working on the Outback account. In this role, plaintiff was responsible for day-to-day media planning and client service activities associated with the Dell account. Plaintiff's duties included, inter alia, budget management; reporting the frequency and performance of Dell advertising; and running weekly status meetings with other members of the Dell team. Plaintiff supervised between two and three employees.

14. In addition to plaintiff, there was another Communications Planning Supervisor, Sean Williamson ("Williamson"), assigned to the Dell account. Mediacom hired Williamson several months after plaintiff joined the Dell team. In contrast to plaintiff, who primarily dealt with day-to-day management of the account, Williamson was responsible for long-term strategic planning for the Dell team.

15. During his tenure on the Dell account, plaintiff excelled. He received praise from his supervisors and clients. While plaintiff was assigned to Dell, Mediacom twice

reviewed his performance, in June 2008 and June 2009. In both instances, plaintiff received a positive evaluation.

16. In or around June 2009, plaintiff's supervisors told him that they wanted plaintiff to take on more strategic responsibilities for the Dell team. Accordingly, Russell and Liss began including plaintiff in strategic meetings with senior members of the Dell team.

### Mediacom Retaliates Against Plaintiff After His Grand Jury Service Begins

17. On or about August 20, 2009, plaintiff was impaneled as a member of the August 20, 2009 Special Grand Jury for the Southern District of New York by the Honorable Loretta A. Preska, Chief United States District Judge. As a member of the Special Grand Jury, plaintiff is required to be available for grand jury service every Tuesday and Thursday from 10:00 a.m. to 5:00 p.m. for 18 months beginning August 20, 2009. Plaintiff's grand jury service may also be extended for an additional 18 months, following the initial term.

18. By letter dated August 20, 2009, the United States Department of Justice for the Southern District of New York notified Mediacom's Human Resources Director, Marti Solomon ("Solomon"), of plaintiff's grand jury service and the obligations of such service. In addition, plaintiff informed Mediacom of his jury service, including emails to Russell, his supervisor, and Human Resources in which plaintiff attached verification from the Court. Until he was removed from the Dell account in mid-February 2010, plaintiff routinely provided Russell and Solomon with Court certification of his jury service for days he was absent from work.

19. During the days that plaintiff missed work due to his grand jury service, plaintiff continued to monitor the Dell account. He generally communicated with his staff

multiple times each day and, even though he was often absent two days each week, he continued to complete assignments promptly.

20. After serving on the grand jury for several weeks, in or around September 2009, Mediacom began treating plaintiff less favorably. In or around September 2009, plaintiff's supervisor, Russell, began asking plaintiff once a week, "Are you still on jury duty?" In addition, plaintiff's co-workers mocked him, referring to plaintiff as "Mr. Three Days a Week."

21. Once plaintiff began his jury service, he was no longer invited to attend strategy session meetings concerning the Dell account. Instead, in the fall of 2009, Mediacom added a different employee, Sue Davidson ("Davidson"), to the account. Davidson, who was responsible for maintaining morale for Mediacom and had limited experience with the Dell account, was assigned strategic responsibilities for the Dell team.

22. In October 2009, Mediacom moved its Manhattan office to a different location. Prior to the move, plaintiff was seated next to Russell, his supervisor, and Williamson, his co-worker. Following the move, plaintiff was placed in a space separate from Russell and Williamson; in contrast, Williamson was seated near Russell and Russell's supervisor, Komack.

## Mediacom Removes Plaintiff from the Dell Account

23. On or about February 12, 2010, Mediacom removed plaintiff from the Dell account. Russell and Komack explained that it did so as part of a reorganization of the Dell team because it was overstaffed, and because Dell was expanding its digital advertising team and plaintiff did not have any digital advertising experience.

24. On information and belief, the reasons Mediacom provided to plaintiff as a basis for removing him from the Dell account are a pretext for discrimination based on his grand

jury service. Despite claiming that plaintiff was taken off the team because of overstaffing, as mentioned above, during the fall of 2009, Russell and Komack added Davidson, who had limited experience with the Dell account, to the team. Also, just one month earlier, in or around January 2010, plaintiff had discussed staffing of the Dell group with Russell. At the time, Russell said that the group staffing was appropriate.

25. In addition, on information and belief, Mediacom matched offers from other companies to prevent certain employees assigned to the Dell account from leaving Mediacom. Plaintiff also believes that Mediacom has hired more employees to work on the Dell account since he was removed.

26. Mediacom chose to remove plaintiff from the Dell team, but retained his co-worker, Williamson, who had worked at Mediacom for less time than plaintiff. On information and belief, although defendant claimed that it was firing plaintiff to make room for someone with digital experience, Williamson did not have any such experience. To plaintiff's knowledge, Mediacom retained Williamson because he was not required to serve on a grand jury. Upon information and belief, Williamson has since been promoted to Planning Director for the Dell team.

27. In or around June 2009, plaintiff's job description was revised. The updated job description did not make any reference to digital experience, despite defendant's purported need for a person with this training.

## Mediacom Requires Plaintiff to Interview for New Positions and Fires Plaintiff

28. As mentioned above, when Mediacom had lost the Outback account, Mediacom assigned plaintiff to work for other accounts until the company found another

permanent position for him. Within 60 days of losing Outback, Mediacom transferred plaintiff to a permanent position on the Dell team.

29. In contrast, after being removed from the Dell team because of his grand jury service, plaintiff was not given any work. Instead, the Human Resources Director, Solomon, told plaintiff that he had to secure a position on another team. When plaintiff asked why the process had been different following the loss of the Outback account, Solomon explained that plaintiff was subject to a "new policy," which required him to apply and interview for a permanent position. On information and belief, other employees were not subject to this purported policy.

30. On information and belief, defendants did not intend to place plaintiff in a new position following his removal from the Dell team. Human Resources told plaintiff that he was eligible for employment at any GroupM agency, including Mediacom's sister advertising firms. However, between mid-February and March 31, 2010, Human Resources, which was responsible for coordinating plaintiff's job search, only setup interviews for two positions. On information and belief, during this period there were several open supervisory positions within GroupM for which plaintiff was qualified but was not hired.

31. Also, on information and belief, plaintiff's personnel file that Human Resources distributed to the Mediacom advertising teams was incomplete. In particular, the personnel file did not include plaintiff's 2008 or 2009 evaluations, reflecting his experience and strong performance working on the Dell account.

32. Between mid-February and March 31, 2010, plaintiff interviewed for supervisory positions with the GlaxoSmithKline ("GSK"), a health care company, and the

Revlon teams. Although plaintiff had relevant experience for both positions having worked on similar accounts, Mediacom did not select plaintiff for either job. Instead, on information and belief, less qualified, junior employees were offered these positions.

33. On March 30, 2010, Mediacom fired plaintiff effective the following day, March 31, 2010.

## CAUSE OF ACTION

### Jury Discrimination in Violation of the Jury System Improvements Act

34. Plaintiff repeats and realleges paragraphs 1-33 as if fully set forth herein.

35. By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of his employment in violation of 28 U.S.C. § 1875.

36. Plaintiff is now suffering and will continue to suffer irreparable injury, monetary damages, as a result of defendants' discriminatory acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a) declaring the acts and practices complained of herein are in violation of 28 U.S.C. § 1875;

(b) enjoining and permanently restraining these violations of 28 U.S.C. § 1875;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendants to place plaintiff in the position he would be in but for defendants' discriminatory treatment of him, and to make him whole for all earnings he would have

269586 v5

8

received but for defendants' discriminatory treatment, including, but not limited to, wages, bonuses, and other lost benefits;

   (e) awarding plaintiff such interest as is allowed by law;

   (f) awarding plaintiff his reasonable attorneys' fees and costs; and

   (g) granting such other and further relief as the Court deems necessary and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
   November 22, 2010

            VLADECK, WALDMAN, ELIAS
            &  ENGELHARD, P.C.

      By: _____
         Valdi Licul
         Jeremiah Iadevaia
         Attorneys for Plaintiff
         1501 Broadway, Suite 800
         New York, New York 10036
         (212) 403-7300